IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN COULTER,<br>    Plaintiff,<br><br>vs.<br><br>CHRISTINE STUDENY, et al.,<br>    Defendants. | Civil Action No. 12-60<br>Judge Bissoon<br>Magistrate Judge Mitchell |

REPORT AND RECOMMENDATION

I.    <u>Recommendation</u>

It is respectfully recommended that the motion to dismiss the Amended Complaint filed by Defendants Christine Studeny and Office of the Butler County District Attorney (ECF No. 28) be granted. It is further recommended that the motion to dismiss the Amended Complaint filed by Defendants Thomas Eidenmuller, Thomas Forrest, Dennis Hoerner and Jeremy Stewart (ECF No. 30) be granted. It is further recommended that the motion to dismiss the Amended Complaint filed by Defendant William R. Shaffer (ECF No. 33) be granted.

II.    <u>Report</u>

Plaintiff, Jean Coulter, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983,[1] alleging that the defendants violated her rights under the First Amendment (freedom of speech, religion and assembly), Sixth Amendment (right to counsel), Eighth Amendment (cruel and unusual punishment), Ninth Amendment (privacy), Fourteenth Amendment (due process), her "fundamental rights as a parent" and her "rights to life, liberty and the pursuit of happiness" in connection with special conditions of probation that were imposed

---

[1] This is the second in a series of seven cases she has filed since September 2011. See Civ. A. Nos. 11-1201, 12-338, 12-641, 12-978, 12-1050 and 12-1241

upon her in 2010. She names as defendants the Office of the Butler County District Attorney and Assistant District Attorney Christine Studeny (together, the Butler County Defendants), four individual members of the Pennsylvania Board of Probation and Parole (Jeremy Stewart, Dennis Hoerner, Thomas Forrest and Thomas Eidenmuller) (together, the Probation Defendants) and William R. Shaffer, a judge of the Court of Common Pleas of Butler County, Pennsylvania.

Presently before this Court for disposition are three motions to dismiss the Amended Complaint, brought by the Butler County Defendants, the Probation Defendants and Defendant Shaffer. For the reasons that follow, the motions should be granted.

Facts

The Amended Complaint alleges that on January 22, 2010, Defendant Stewart spoke to her and told her he was "imposing" a sentence on her that she could not reside in the Philadelphia area while she was on probation. He then told her she must find a place to live in the Pittsburgh area and report on January 25, 2010 by telephone to agents in the Butler County sub-office of the Board of Probation and Parole. When she protested that Stewart did not have the authority to impose a sentence, he responded that "they" were working on it, which she alleges showed his conspiracy with members of the legal/justice system. (Am. Compl. ¶ 9.)[2]

She obtained new housing, telephoned in and reported to the Butler sub-office. On January 26, 2010, she alleges that she met with Defendants Hoerner and Forrest, who imposed another "new" sentence upon her, namely probation with numerous conditions, despite any

---

[2]ECF No. 25. It is noted that, despite these allegations, Plaintiff did in fact move to Philadelphia. See Civ. A. No. 11-1201, ECF No. 8 (notice informing the Court that, as of November 27, 2011, she had moved to her current address, 4000 Presidential Boulevard, Apt. 507, Philadelphia, Pennsylvania 19131). As of that date, Plaintiff was still on probation (and remains so to this day), yet she has not alleged that her probation has been revoked as a result of her moving to Philadelphia. She apparently made this move sometime after filing the case on September 19,

authority to do so. When she protested, they stated that they have been in touch with Defendants Studeny and Shaffer, which she alleges, showed their conspiracy to violate criminal statutes. Further, she alleges that ADA Studeny and Judge Shaffer either provided legal advice or agreed to "look the other way" with respect to planned criminal actions, in either event removing their immunity. (Am. Compl. ¶¶ 10-14.)

Plaintiff alleges that, on January 28, 2010, she wrote to Defendant Eidenmuller to inform him of the actions of his subordinates and request his assistance, but he took no action. (Am. Compl. ¶ 16.) She states that, "[w]hile Defendants Studeny and Shaffer, did not become involved directly with Coulter, during these 5 days, it is obvious that both Studeny, and Defendant Shaffer, had been encouraging and directing the actions of the Defendant probation Agents, probably for some time." (Am. Compl. ¶ 17.)

Plaintiff alleges that, on March 21, 2012, she was contacted by a Mr. Marjoram of the Board of Probation and Parole's "Internal Affairs" Unit, who informed her that, at some point after January 26, 2012, Defendant Shaffer held what Marjoram called a "McGregor Hearing" which "somehow retroactively de-criminalized the actions of Defendants Hoerner, Forrest and Stewart." (Am. Compl. ¶ 17.) Plaintiff researched the "MacGregor Hearing" and discovered that it referred to a case from 2006 which determined that probation officers do not have the authority to impose a sentence of probation even when they use the form provided by their employer, which is for individuals who are on state parole. She therefore concludes that "it appears highly likely that Shaffer (perhaps acting with Studeny), 'master-minded' the crimes committed against Coulter, and perhaps duped Defendants Stewart, Hoerner and Forrest into being their 'front men' in this case." (Am. Compl. ¶ 17.)

---

2011, when she listed an address in Pittsburgh. 3

As the public record indicates,[3] Plaintiff's minor daughter A.C. was formally detained by Butler County Children and Youth Services (CYS) on February 21, 2006 (at which time she was ten years old) based on her allegations of both physical and sexual abuse as well as inappropriate and extreme forms of discipline perpetrated upon her by Plaintiff. Following a hearing and recommendations of a Juvenile Master, on July 3, 2006, the Court of Common Pleas found that A.C. was a victim of sexual abuse and exploitation and the perpetrator was Plaintiff, her natural mother.

Plaintiff was charged with one count of involuntary deviant sexual intercourse, two counts of aggravated assault, recklessly endangering another person, endangering the welfare of a child and four counts of simple assault at No. 727 of 2006 in the Criminal Division of the Court of Common Pleas of Butler County, Pennsylvania. On May 11, 2007, Plaintiff entered a negotiated plea of nolo contedere to one count of aggravated assault, a felony of the second degree, violating 18 Pa. C.S. § 2702(a)(4). On July 17, 2007, Judge Shaffer sentenced her to a fifteen to thirty-month period of incarceration to be followed by thirty-six months of probation.

The child was adjudicated dependent as a result of Plaintiff's actions at Dependency Action CP-10-DP-0000051-2006. Plaintiff served her maximum sentence for the criminal conviction and on January 25, 2010, she was released from prison and began serving her probationary term.

On January 22, 2010, three days prior to Plaintiff's release from prison, the Commonwealth filed a "Motion for Special Conditions of Probation," in which it stated that her

---

[3] Plaintiff vehemently objects whenever any party or this Court relates the background information relevant to her civil rights complaints. As has been repeatedly explained to her (see Order at ECF No. 27), this information is not only necessary to understand the context of her claims, but also is part of the public record.

4

State Parole and Probation Officer was requesting that special conditions be placed on her probation, including that she have no contact with her daughter, the victim in the case. (ECF No. 32 Ex. B at 18.) On January 26, 2010, the day after her release, she met with Dennis Hoerner, a parole supervisor for the Butler County sub-office of the Pennsylvania Board of Probation and Parole, as well as Agent Thomas Forrest from the same office, who was to supervise her while on probation. During this meeting, Hoerner informed Plaintiff of a written instruction he had prepared, which instructed her not to have contact with her daughter, and she signed this condition. The trial court held an evidentiary hearing on the Commonwealth's motion on February 1, 2010,[4] and on February 2, 2010, the court entered an order granting the Commonwealth's motion. (ECF No. 32 Ex. C.) Plaintiff appealed and on March 16, 2010, Judge Shaffer issued a memorandum opinion explaining his reasoning for granting the Commonwealth's motion for the imposition of special conditions of probation. (ECF No. 32 Ex. D.) On February 25, 2011, the Superior Court affirmed the decision of the trial court. (ECF No. 32 Ex. E.) Plaintiff filed a petition for allowance of appeal with the Pennsylvania Supreme Court, but on October 13, 2011, that court denied her petition. (ECF No. 32 Ex. G.)

As a result of all of these proceedings, another proceeding was initiated in Orphans' Court to terminate Plaintiff's parental rights at No. O.A. 57 of 2007. On January 11, 2011, Judge Thomas Doerr filed a Memorandum Opinion which terminated Plaintiff's parental rights as to A.C. and ordered custody of A.C. to remain with CYS (which had the right to proceed with A.C.'s adoption). Plaintiff appealed and on November 21, 2011 the Superior Court affirmed Judge Doerr's decision. She filed a petition for allowance of appeal, but the Pennsylvania

---

[4] This apparently is the hearing that Plaintiff is referring to. See Commonwealth v. MacGregor, 912 A.2d 315, 318 (Pa. Super. 2006) (explaining that court could impose restrictive conditions

5

Supreme Court denied it on February 23, 2012.

Thus, properly placed in context, her claims appear to be that Defendants engaged in a conspiracy to impose a "new sentence" upon her in the form of special conditions of probation, those conditions being that she had to live in the Pittsburgh area and (although not stated) that she not have contact with her daughter.

Procedural History

Plaintiff filed an initial complaint on January 17, 2012 (ECF No. 1). On June 14, 2012, motions to dismiss were filed by the Probation Defendants (ECF No. 14) and Defendant Shaffer (ECF No. 17). On June 18, 2012, a motion to dismiss was filed by the Butler County Defendants (ECF No. 21).

On July 5, 2012, Plaintiff filed an Amended Complaint (ECF No. 25). Count I alleges that Defendants violated her "fundamental rights of a parent," First Amendment rights of freedom of speech and assembly and Eighth Amendment protection against cruel and unusual punishment when Defendant Hoerner "imposed" a sentence on her that denied her any contact with her child and the other defendants were co-conspirators with this action. Count II alleges that Defendants Stewart, Hoerner and Forrest denied her Fourteenth Amendment right to due process by imposing a sentence on her and the other defendants were aware of and joined in this conspiracy. Count III alleges that Plaintiff's First Amendment rights to freedom of religion, freedom of speech and freedom of assembly were violated when the conditions of probation imposed on her precluded her from attending various religious services and prevented her from having contact with anyone she "should have known" has a drug problem, since she cannot know who might be included in this restriction. Count IV alleges that her right to protection from

---

on a probationer's future conduct pursuant to 42 Pa. C.S. § 9771(a)).

unreasonable searches and seizures and right to privacy were violated when the illegal sentence required her to undergo a psychological exam and release the results to the conspirators. Count V alleges that her Sixth Amendment rights and rights to "life, liberty and the pursuit of happiness" protected by the Ninth Amendment were violated when Defendants imposed an illegal sentence upon her without informing her of the charges. She requests damages in the amount of $100,000,000 and "any other relief which this Court is authorized to take, to protect Coulter and her Family from future criminal actions by these individuals and their supervisors/employers—including reporting (by the Court) of the actions of all of the Defendants which have violated Federal and State Criminal Statutes—to encourage criminal Prosecution of these Criminals acting 'Under the Color of Law.'" (Am. Compl. at 16-17.)

On July 19, 2012, motions to dismiss the Amended Complaint were filed by the Butler County Defendants (ECF No. 28), the Probation Defendants (ECF No. 30) and Defendant Shaffer (ECF No. 33).

Standard of Review

The Supreme Court recently issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 1949-50. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

In reviewing a motion to dismiss, a court may consider matters of public record, including Plaintiff's criminal case, the daughter's dependency case and the case concerning the termination of Plaintiff's parental rights. See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The Butler County Defendants have attached to their brief the June 30, 2010 order of Judge Horan dismissing Plaintiff's civil complaint in Butler County and the docket sheet for her criminal case. (ECF No. 29 Exs. B, C.) The Probation Defendants have submitted Judge Shaffer's February 2, 2010 order imposing special conditions of probation, Judge Shaffer's March 16, 2010 Memorandum Opinion and Order Pursuant to Pa. R.A.P. 1925(a), the February 25, 2011 opinion of the Superior Court affirming Judge Shaffer's order, the Superior Court docket sheet on her appeal from the order imposing the special conditions of probation and the Pennsylvania Supreme Court's October 13, 2011 order denying her petition for allowance of appeal. (ECF No. 32 Exs. C, D, E, F, G.) All of these public records may be cited without converting the motion into a motion for summary judgment.

The Butler County Defendants and Defendant Shaffer contend that the complaint fails to

8

state a claim upon which relief could be granted because the vague allegations of their involvement based on "encouraging and directing illegal actions" of others are insufficient. In addition, the Butler County Defendants assert that she has failed to allege a policy or custom linked to the deprivation of some constitutional right and that ADA Studeny has absolute prosecutorial immunity from the allegations of the Amended Complaint. The Probation Defendants argue that the Court should abstain from exercising jurisdiction over Plaintiff's claims under either the Rooker-Feldman doctrine or the principle of Younger abstention and that they are immune from her request for damages under the doctrine of qualified immunity. Defendant Shaffer raises the issue of absolute judicial immunity as a bar to all claims asserted against him. The Court need not reach all of these issues.

Section 1983 Claims

It is provided in 42 U.S.C. § 1983 that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). See also Baker, 443 U.S. at 140; Graham v. Connor, 490 U.S. 386, 394 (1989).

However, "[c]ertain wrongs affect more than a single right and, accordingly, can

9

implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." Soldal v. Cook County, Illinois, 506 U.S. 56, 70 (1992).

### First Amendment

The First Amendment provides that "Congress shall make no law ... prohibiting the free exercise of [religion] or abridging the freedom of speech … or the right of the people peaceably to assemble." U.S. Const. Amend. 1. "First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States." NAACP v. Claiborne Hardware Co., 458 U.S. 886, 907 n.43 (1982). Plaintiff alleges that Defendants violated her First Amendment rights to free speech, exercise of religion and assembly. However, her allegations do not actually implicate First Amendment freedoms, as she has consistently exercised her right to free speech, she has not been denied the right to "assemble," and her vague allegations about being denied the ability to attend unspecified religious services because of the 10:00 p.m. to 6:00 a.m. curfew condition do not state a claim relating to her exercise of religion. Therefore, the First Amendment is not implicated in this case.

### Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. Amend. 4. This provision has been made applicable to the states by the Fourteenth Amendment. Ker v. California, 374 U.S. 23, 30 (1963). However, the Supreme Court has held that the Fourth Amendment is not violated when a probationer is required, as a condition of probation, to permit warrantless searches of his home. Griffin v. Wisconsin, 483

U.S. 868 (1987). Thus, Plaintiff's allegation that her rights were violated when she was required to submit to a psychological examination as a condition of probation and to produce the exam results does not state a claim under the Fourth Amendment.

### Sixth Amendment

The Sixth Amendment provides various protections for defendants in criminal prosecutions, such as the right to counsel, to have a speedy and public trial and to confront witnesses. U.S. Const. Amend. 6. It has no application to the allegations of this complaint.

### Eighth Amendment

The Eighth Amendment recognizes the right to be free from "cruel and unusual punishments." U.S. Const. Amend. 8. Plaintiff alleges that she was subjected to cruel and unusual punishment when Hoerner imposed upon her the condition that she not have contact with her daughter. However, this allegation is subsumed within Plaintiff's due process claim.

### Ninth Amendment

The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. 9. The Court of Appeals has explained that "the Ninth Amendment does not independently provide a source of individual constitutional rights." Perry v. Lackawanna Children & Youth Servs., 345 Fed. Appx. 723, 726 (3d Cir. 2009) (citing Jenkins v. C.I.R., 483 F.3d 90, 92 (2d Cir. 2007); Schowengerdt v. United States, 944 F.2d 483, 490 (9th Cir. 1991)). Thus, the Ninth Amendment is not implicated herein.

### Fourteenth Amendment

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14. Plaintiff alleges that

her due process rights were violated when Stewart, Hoerner and Forrest "imposed" a sentence on her that included the restriction that she have no contact with her daughter without providing her notice and an opportunity to defend herself. The Fourteenth Amendment is thus implicated in this case. As explained below, however, Plaintiff received all the process to which she was "due" and thus her claim fails.

Other Allegations

Plaintiff also alleges that her "fundamental rights as a parent" have been violated. "The Supreme Court has recognized a 'fundamental liberty interest of natural parents in the care, custody, and management of their child." Miller v. City of Phila., 174 F.3d 368, 373 (3d Cir. 1999) (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982)). "This interest, however, must be balanced against the state's interest in protecting children suspected of being abused." Id. (citing Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997)).

In this case, as outlined above, the state engaged in a lengthy process in which Plaintiff was provided with procedural due process: counsel, extensions of time, the right to submit evidence and call witnesses and the right to appeal. Based upon the record, the court concluded that Plaintiff had abused her child and posed a threat of doing so again. The state's interest in protecting the child from Plaintiff therefore outweighed Plaintiff's liberty interest in the care, custody and management of her child and thus her conditions of probation were amended to include the provision that she not have contact with her daughter. There is no basis for finding a violation of Plaintiff's fundamental rights as a parent in this proceeding.

In addition, Plaintiff cannot allege the appropriate level of conduct. "To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'" Miller, 174 F.3d at 375 (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). The

extensive procedures applied to Plaintiff cannot be said to shock the conscience.

Finally, she alleges that she has been denied the right to "life, liberty and the pursuit of happiness." Her life and liberty interests are subsumed within her Fourteenth Amendment claim. However, neither the federal Constitution nor its amendments guarantee a generalized right to the pursuit of happiness. See Coffey v. United States, 939 F. Supp. 185, 191 (E.D.N.Y. 1996) ("While the Declaration of Independence states that all men are endowed certain unalienable rights including 'Life, Liberty and the pursuit of Happiness,' it does not grant rights that may be pursued through the judicial system. Although the Constitution provides many important protections, a specific guarantee for the pursuit of happiness is not among those granted by the Constitution or its amendments."); Cobble v. Value City Furniture, 2007 WL 2228156, at *4 (W.D. Ky. July 27, 2007) ("[T]he pursuit of happiness is not a legally cognizable interest."). Consequently, with respect to these allegations, Plaintiff has failed to state a claim upon which relief may be granted against Defendants.

Due Process Claim

Plaintiff contends that she was denied due process when probation agents "imposed" a sentence upon her that included the provisions that she have no contact with her daughter and that she had to move to Pittsburgh and/or was prohibited from moving to Philadelphia. As she has done in her other civil rights cases, Plaintiff makes outlandish allegations that are clearly untrue based upon the public record. In her first civil rights case, No. 11-1201, she alleged that, in September 2009, Judge Doerr orally "sentenced" her to a term of probation that included a condition that she have no contact with her daughter. The Court of Appeals explained that: "Judge Doerr did not 'sentence' Coulter to a term of probation with a 'no-contact' order as a condition of probation. It was Judge Shaffer who, in presiding over her criminal case, imposed a

13

'no contact' order in February, 2010 as a condition of her probation." (Civ. A. No. 11-1201, ECF No. 30-2 at 3.) For the very same reason, her allegation that certain probation agents "sentenced" her to this condition (without providing notice and an opportunity to be heard), and then Judge Shaffer "de-criminalized" their actions by holding a hearing after the fact, is belied by the public record and must be dismissed. It was Judge Shaffer who imposed this condition of probation, after Plaintiff was provided notice and an opportunity to be heard. The fact that she is unhappy with the outcome of these proceedings does not mean that she was denied due process.

In addition, Defendants Studeny and Shaffer note that the Amended Complaint alleges that "While Defendants Studeny and Shaffer, did not become involved directly with Coulter … it is obvious that both Defendant Studeny, and Defendant Shaffer, had been encouraging and directing the actions of the Defendant probation Agents, probably for some time." (Am. Compl. ¶ 17.) Bare allegations of an agreement to deprive a plaintiff of her constitutional rights are insufficient to state a claim. See Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level….").

Prosecutorial Immunity

ADA Studeny was the prosecutor in Plaintiff's criminal case and, Plaintiff alleges, in the "MacGregor hearing" that resulted in additional conditions of probation being imposed upon her. The Butler County Defendants move for dismissal of all claims against her on the ground of absolute prosecutorial immunity. Plaintiff responds that her claims arise from actions Studeny took outside her role as a prosecutor.

The Supreme Court has held that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" is entitled to absolute immunity to

suit under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  As the Court explained more recently:

> Liberally construed, Imbler's complaint included not only a charge that the prosecution had been wrongfully commenced, but also a charge that false testimony had been offered as well as a charge that exculpatory evidence had been suppressed.  His constitutional claims were thus broader than any specific common law antecedent.  Nevertheless, relying on common law decisions providing prosecutors with absolute immunity from tort actions based on claims that the decision to prosecute was malicious and unsupported by probable cause, as well as from actions for defamation based on statements made during trial, we concluded that the statute should be construed to provide an analogous defense against the claims asserted by Imbler.  The policy considerations that justified the common law decisions affording absolute immunity to prosecutors when performing traditional functions applied equally to statutory claims based on the conduct of the same functions.

Kalina v. Fletcher, 522 U.S. 118, 124-25 (1997) (footnotes omitted).

Plaintiff's allegations against Studeny arise out of her actions as a prosecutor for the state.  Plaintiff argues that Studeny does not have immunity because she "knew" about the actions taken by the other defendants before the matter was raised in court.  This vague allegation is insufficient to overcome the defense.  Absolute immunity for prosecutors is a defense to an individual capacity suit.  Kentucky v. Graham, 473 U.S. 159, 166-67 (1985).  Therefore, ADA Studeny is entitled to absolute prosecutorial immunity from actions Studeny took and Plaintiff's claims against her should be dismissed.

Absolute Judicial Immunity

Defendant Shaffer argues that he is immune from any damages claims based on the doctrine of absolute judicial immunity.  A judge is immune from liability for all actions taken within a judicial capacity.  Mireles v. Waco, 502 U.S. 9 (1991); Forrester v. White, 484 U.S. 219, 225 27 (1988); Stump v. Sparkman, 435 U.S. 349 (1978).  Judicial immunity is an "immunity from suit, not just from ultimate assessment of damages."  Mireles, 502 U.S. at 11.  Further, a

15

"judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump, 435 U.S. at 356-57 (quoting Bradley v. Fisher, 13 Wall. 335, 351 (1872)).

The Pennsylvania constitution provides that there shall be one court of common pleas for each judicial district and that it shall "hav[e] unlimited original jurisdiction in all cases except as may otherwise be provided by law." Pa. Const. Art. V, § 5(b). Moreover, the Judicial Code states that "the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings…." 42 Pa. C.S. § 931(a). Thus, Judge Shaffer had subject matter jurisdiction over the case before him.

On February 2, 2010, Judge Shaffer granted the Commonwealth's Motion for Special Conditions of Probation and precluded Plaintiff from having any contact with her child during the period of her probation. As noted above, this order was affirmed by the Superior Court on February 25, 2011. Thus, Judge Shaffer's actions were taken in his judicial capacity.

Plaintiff argues that Judge Shaffer does not have immunity because he "knew" about the actions taken by the other defendants before the matter was raised in court. She points to her allegations that Hoerner and Forrest stated that they had been "in touch" with Judge Shaffer. This argument is unavailing, because every plaintiff could argue around the doctrine of judicial immunity by claiming that she is actually alleging liability on the part of the judge based on knowledge obtained by the judge outside of court. She also alleges that he scheduled a hearing regarding conditions of her probation and during this hearing he "de-criminalized" the actions of the other defendants. This argument is nonsensical and will not be considered further.

Whether an act is a "judicial act" depends upon whether it is a function normally

performed by a judge and whether the parties dealt with the judge in his judicial capacity. Stump, 435 U.S. at 361-62. The acts alleged here are all functions normally performed by state court trial judges and there is no suggestion that the parties dealt with Judge Shaffer other than in his judicial capacity. See Capogrosso v. Supreme Court of State of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (plaintiff sued four New Jersey Superior Court judges, alleging that they engaged in judicial misconduct during proceedings she brought before them, but the case was dismissed based on judicial immunity).

Regardless of Plaintiff's outrageous allegations about what Judge Shaffer "knew" before her case began, the only actions he took were those performed by a judge, namely holding hearings and entering orders in court regarding Plaintiff's conditions of probation. Entering an order in court relating to the matter at issue is a quintessential judicial act. A judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." Forrester v. White, 484 U.S. 219, 227 (1988). Moreover, actions taken "off the bench," so long as they are judicial in nature, are also protected by judicial immunity. Sparkman, 435 U.S. at 361-62.

Plaintiff's allegations involve judicial actions taken by Judge Shaffer, who was acting within his judicial authority. Therefore, he is immune from Plaintiff's suit for damages and her claims against him should be dismissed.

Moreover, assuming that Plaintiff is seeking injunctive relief against Judge Shaffer, she could not obtain it. Congress amended § 1983 in 1996 to provide that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity … unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff has not alleged that a declaratory decree was violated or that declaratory relief is unavailable. Because any injunctive relief sought against Judge

17

Shaffer would address his actions in his judicial capacity, her claim would be barred.  See Azubuko v. Royal, 443 F.3d 302, 303-04 (3d Cir. 2006).

For these reasons, it is recommended that the motion to dismiss the Amended Complaint filed by Defendants Christine Studeny and Office of the Butler County District Attorney (ECF No. 28) be granted.  It is further recommended that the motion to dismiss the Amended Complaint filed by Defendants Thomas Eidenmuller, Thomas Forrest, Dennis Hoerner and Jeremy Stewart (ECF No. 30) be granted.  It is further recommended that the motion to dismiss the Amended Complaint filed by Defendant William R. Shaffer (ECF No. 33) be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within the time specified in the Notice of Electronic Filing.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections will waive the right of appeal.

    s/Robert C. Mitchell_____
    ROBERT C. MITCHELL
    United States Magistrate Judge

Dated: September 21, 2012

cc:    Jean Coulter
       4000 Presidential Boulevard
       Apartment #507
       Philadelphia, PA 19131